# Bruce *vs* Morrison, Sayre, &c. and Morrison and Sayre *vs* Bruce.

CHANCERY. | 5bm 33 | 132 726

APPEAL FROM THE MASON CIRCUIT.

*Case* 12.

*Liens. Mortgages. Practice.*

CHIEF JUSTICE EWING delivered the opinion of the Court.

*Sept.* 16.

EXECUTIONS issued on two judgments against John Case stated. Bruce, one in favor of Lodwick, the other in favor Young, which were levied on 300 acres of land, the property of Bruce, 288 acres of which was sold, on three months credit, and Alex. Bruce became the purchaser for upwards of $1800, and executed sale bonds for the purchase money, with John Bruce as his security, received a deed and delivered to John Bruce his written memorandum, in substance, "that he claimed no advantage of the said purchase, but the said land is yet the property of John Bruce, he having purchased it as his friend; provided however, that the same is to be liable for the payment of the sums for which it was sold." Shortly after the sale, John Bruce left the State, for Washington City, where he remained for several months. Executions were issued on the sale bonds, in his absence, and the amounts paid by Alexander mainly, but by the assistance of Horatio Bruce, the friend and relative of John, who paid a part of the amount out of the funds of John, the proceeds of a lot he had sold, and the Sheriff's commissions and charges, and perhaps a portion of the debt contracted by Alexander in borrowing money to make payment, by the assistance of Horatio, was paid by John on his return home. Afterwards, in the absence of John at Washington, an execution issued in favor of Sayre, for the balance of a judgment recovered on a note of $2500, which had been executed by John Bruce, with Alexander and others as his sureties, and which had been replevied by Alexander, and was levied on said tract of land; and the same being valued at $18 per acre, was sold and purchased by Andrews, as the attorney of Sayre, at one dol-

lar per acre. Another execution issued for the balance of Sayre's debt, it being at that time something upwards of $300, and was levied on Alexander's right of redemption in said tract, which was sold and purchased by Morrison, under a previous agreement between Andrews the attorney, Alexander Bruce, and Morrison, that the latter should bid the balance due on the execution, and no one was to bid against him, and execute his note to Sayre for the amount bid by Andrews and the amount bid by himself, payable in about eight months, and to hold the land as a security for the money, also as a security for some two thousand dollars which Alexander, at that time, owed Morrison, to the extent of the lien which he held on the land for the money paid on Lodwick's and Young's executions. But in case John Bruce returned from Washington and satisfied the Sayre debt, the sale was to be void and of no effect. Morrison bid the land off upon the terms agreed on, at a single bid, and afterwards an agreement in writing was executed between Alexander and Morrison, expressive of the terms of the agreement, and by which it was further agreed, that in case the money was not paid to Sayre, or refunded to Morrison,, in the event he had to pay it, and the debt owing by Alexandar to Morrison was not paid, in some reasonable time, that then Morrison was to set up and sell the land at public auction, to the highest bidder, for cash, and if it sold for more than the amount due him as aforesaid, the excess was to be paid to Alexander. John Bruce, in July next after the sale to Morrison, (which was made in April, 1834,) returned home from Washington and paid to Alexander Bruce $1900, also to Sayre, on his debt, $170, and $60, which we have reason to believe he regarded as a full satisfaction of the entire balance due him. Sayre, nevertheless, afterwards received from Morrison, payment of the whole amount of his note, making no deduction for the amount paid by John Bruce. It also appears that the note of $2500, and also a note of $700, the former given by John Bruce, with sureties, the latter given by Ishmael Davis, both payable in one hundred and twenty days, were executed to Sayre in satisfaction of a bill of exchange which had been lifted at the Branch of

the United States Bank at Lexington, by Sayre, at the instance and for the benefit of John Bruce and Ishmael Davis, which bill and costs amounted to about $3005; and that in lifting the bill, Sayre had used $225 of Bruce's funds in Bank, and had advanced, out of his own funds, the balance of the amount of the bill; and that another small sum of $10, had been paid on the bill before the notes aforesaid were executed; and that Ishmael Davis executed the note of $700 as his proportion of the amount of the bill, after the note of $2500 had been executed by John Bruce, and with the understanding that the amount which the $700 note, when added to the $2500 note, exceeded the amount due upon the bill, when paid, was to be credited by Sayre, on the latter note. The $700 was paid and no credit endorsed on the other note for the excess.

Morrison, some time afterwards, procured a Commissioner, appointed by himself, to sell the land under the agreement with Alexander Bruce, and purchased it himself, at $1200, which he says in his answer, was several hundred dollars less than the amount due him by Alexander Bruce, and brought a suit in ejectment against John Bruce, who had continued in possession of the land, and recovered judgment at law and was let into the possession.

Upon these facts John Bruce filed his bill against Morrison, Sayre, and Alexander Bruce, for the redemption of the land, with an injunction restraining Sayre from receiving and Morrison from paying the amount of the note executed by the latter to the former, which he then believed was not paid, and afterwards, by amendment, praying that the amount might be refunded by Sayre, and for general relief.

The Circuit Court decreed that Sayre should refund to Bruce $400, and that John Bruce be allowed to redeem the land sold, upon the terms of paying to Morrison the amount of his and Andrews purchases of the land, with interest, and also, the amount of $1821 07, with interest from the 17th December, 1832, the amount of Alexander's lien upon the land, as stated to have been paid by him on the Lodwick and Young executions; and a Com-

BRUCE
*vs*
MORRISON, &c.

The decree of the Circuit Court.

missioner was appointed to estimate the rents which Morrison was decreed to account for.

John Bruce has appealed to this Court, and cross errors have been assigned by Sayre and Morrison each.

If the amount, or any part of it, paid by Morrison to Sayre, was improperly and without just claim received, it should be refunded, as the means of lessening the sum to be paid by John Bruce to Morrison, for the redemption of the land. Had it not been received by Sayre, Bruce could not be required to refund it as the condition of his right to redeem. He had a right, therefore, to call back this fund in easement of the obligation which rested upon him to restore it to Morrison, in the redemption of the land. Sayre, therefore, was a proper, if not a necessary party to a full and final adjustment of the whole matter, and was properly brought before the Court.

Money advanced may be recovered back, if paid within five years before suit brought.

Nor was Bruce barred of his claim against Sayre by the statute of limitations. The amount paid by Morrison, was paid within five years next before the institution of the suit, and was the residue embraced in a note which had been given in renewal of, or extension of the time of payment of the amount due on the bill of exchange; and all the prior payments or reception of money by Sayre, should be first applied in extinguishment of the sum, with legal interest, advanced by Sayre, and the last amounts received, if paid and received wrongfully and without just claim, within five years next before the institution of the suit, may be recovered back, as has heretotofore been determined by this Court.

Though a bill may be unskilfully drawn so as to render it doubtful whether fraud, mistake, or usury is intended principally to be relied on, yet if the facts clearly sustain either ground, relief should be afforded.

We have found much difficulty in coming to a satisfactory conclusion on the merits of the case, against Sayre, owing to the bungling and unskilful manner in which the facts have been presented in the bill and amended bills. The draftsman seems to have had in view no fixed, equitable ground upon which he based his right to recover. Neither usury, nor mistake, or fraud, is specifically charged. But though they are not, we have concluded that if the facts charged clearly constitute either, that relief ought to be afforded. And if they do not, still we think that the charge in the bill, that the excess paid on the $700 note executed by Ishmael Davis, over and above

the amount advanced by Sayre in taking up the bill, when added to the $2500 note, was to be credited on the latter note, is sufficiently sustained by the evidence of Davis, and the evasive answer of Sayre taken in connection with the fact that the amount embraced in the two notes greatly exceeds the amount which appears manifestly to have been advanced by Sayre in taking up the bill, to authorize the relief asked against Sayre. The amount decreed against him, according to the rough estimate which we have made, falls short of the amount which should have been decreed, and the decree must, therefore, be reversed.

As to the branch of the case against Morrison and A. Bruce, we feel perfectly satisfied that the Circuit Court was right in allowing John Bruce to redeem the land. The title, in form, passed to Morrison under the Sheriff's sale, but subject to the private agreement between the parties, and with notice on the part of Morrison, of the equity of John Bruce. And it passed in connection with the private agreement, and subject to its provisions in the nature of a defeasance, as a security for money, and was in effect, a trust or mortgage, with power to sell, and as such, under our statutes, it could not be sold without the intervention of a Court of Equity, unless by the written assent of those that were interested in the equity. The sale made by Morrison's Commissioner, therefore, is wholly inoperative, and can, in no respect, change or affect the rights of the parties.

The facts proven by Davis, H. Bruce and another witness, as spoken of in Morrison's presence, when the private arrangement was made, were sufficient at least to put Morrison upon enquiry as to John Bruce's equity, independent of the fact of the continued possession of the land by J. Bruce. Morrison took the land and the debt owing by John Bruce for the amounts advanced by Alexander, in payment of the Lodwick and Young executions, as Alexander held it, and subject to the like equity in J. Bruce, with the additional lien upon it, to secure the repayment of the amounts for which he had become responsible to Sayre for his and Andrews purchases, but with this limitation: As the land and debt on John Bruce and lien on the land to secure it, under the agreement be-

Where a purchaser under execution declared by writing to the defendant, that he purchased as his friend. and that he might redeem, a sub-purchaser, with knowledge of such facts, takes as the first held- subject to redemption, and any sale without the authority of a decree, or written assent of first owner. passes no title to a purchaser.

Facts sufficient to put a purchaser on enquiry as to title.

tween Morrison and A. Bruce, was to be held by Morrison to secure debts at the time owing by Alexander to him, John Bruce should not have been decreed to pay him more than the amounts advanced by Alexander in satisfaction of the Lodwick and Young executions, nor more than the amount of the debts of Alexander, secured by the lien, that was unpaid at the time of the decree. The balance, if any, should have been decreed to be paid to Alexander, if it was not before paid. And in these principles the decree is obviously wrong in several particulars.

It is alledged in the complainants bill, that he paid to Alexander $1900 in July, 1834, on his return from Washington, which must be taken to have been paid on account of the debt secured by the lien, which had previously passed to Morrison. The fact of payment is made out by the omission of Alexander to answer and deny it, as also by the confession of Alexander that the payment had been made, proven by Davis. This amount, according to our rough estimate, exceeds the amount, with interest, advanced by Alexander on the Lodwick and Young executions, and would satisfy the whole debt of John to Alexander, secured by a lien upon the land, and before transferred to Morrison, as it was paid to Alexander. the assignor and original holder, without notice of the assignment. But the proof establishing the fact of payment is not competent againit Morrison. But it is clear that a part of the amount of the Lodwick and Young executions was paid by John Bruce, or out of his funds. Horatio Bruce sold a lot belonging to him and applied a a part of the proceeds towards their payment, and John Bruce, on his return from Washington, paid the Commissions and other fees to the Sheriff, and perhaps paid or caused to be paid back to the lender, a part of the money borrowed by Alexander to make payment. These payments should have been deducted from the amount of the executions, or an estimate should have been made and the true amount advanced by Alexander, out of his own funds, ascertained, and that amount only, in any event, decreed to be paid to Morrison.

But further, it is obvious from the answer of Morrison, evasive as it is, that an amount has been decreed in his favor, on account of this debt, greatly exceeding the amount that was owing to him by Alexander Bruce. His answer states in substance, that after giving Alexander Bruce credit for the $1200, for which the land was struck off to him at his Commissioner's sale, and for all other payments, "said A. Bruce was still indebted *several hundred dollars.*" The word *several,* in giving effect to an evasive answer, should not, perhaps be allowed to exceed $300, which added to the $1200, would make $1500 only, owing at the date of the sale. But the answer is wholly evasive and insufficient, and the exceptions to it ought to have been sustained by the Circuit Court. It is obvious from what has been said, that John Bruce had a direct interest in the question of A. Bruce's indebtedness to Morrison, and had a right to call upon Morrison to exhibit his accounts and demands against him, and to set forth and show all payments that had been made, or were in the course of payment, also, all funds and securities which he held for their payment, and to require them, if necessary, to interplead and settle their accounts and payments, and to exhibit the evidences of both. The Court should not have been satisfied with a naked statement of the amount of indebtedness, but had the power, and it was its duty, to require an exhibition of all the facts and documentary evidence of indebtedness and payments and funds and securities, so as to enable the Court to determine as to the amount due and true condition of the accounts between them.

But there is another view of the facts in this record, by which the amount of John Bruce's responsibility may be still further reduced. It appears that Morrison holds a mortgage on other property of Alexander Bruce, and perhaps other funds and securities which may be sufficient to pay the whole amount of his debts to Morrison, secured by the lien on the land transferred to Morrison. And as John Bruce has paid to Alexander $1900 of the amount of that lien, which, for the want of competent proof, cannot be made available against Morrison, it would seem to be most just and equitable that all the secureties and

A holder of a lien on land for money advanced in its purchase, as the friend of the debtor, may not incumbent he land farther by his own debts. and transfer it to a third person to the prejudice of the defendant in the execution, especially whilst such third person holds other securities for his demands against his vendor.

funds of Alexander, which are held by Morrison, should be first subjected to the payment of said lien, to the extent of the $1900 so paid by John, or that those securities and funds should be transferred to him, so as to enable him to make them available, by the decree of the Court, for his indemnity. It would be iniquitous and unjust, after John had discharged this lien, by paying to Alexander, the assignor, without notice of its transfer, to throw the whole burden of a second payment upon him, and permit Alexander to escape with his property and funds held by Morrison discharged from incumbrance by the payment. And even if there were no funds or securities of Alexander in Morrison's hands, a decree should have been rendered against Alexander for any amount of this lien, not exceeding $1900, with interest, which John may have been decreed to pay to Morrison. And if any part of the rents of the land, recoverable from Morrison, should be used as a set-off of any part of this lien, a decree for the amount so used, should be rendered over against Alexander, in favor of John; and the amount of the rents and profits should have been first ascertained and applied by the Court in diminution of the amount decreed against John for the redemption of the land.

It is, therefore, the opinion of the Court, that the decree of the Circuit Court is erroneous, and that it must be reversed and cause remanded, that the exception of the complainant to the answer of Morrison may be sustained, and that he may be required to answer over, and that other amendments be allowed if necessary, with a view to a determination of the case as indicated in this opinion, and that an Auditor may be appointed to ascertain and state the accounts between Sayre and John Bruce, charging Bruce with the balance of the bill and costs of protest, and interest thereon, after deducting the $225 paid out of the funds of Bruce in Bank, also, charging him with all legal costs expended by Sayre in the collection of said bill, or the notes given in lieu thereof and crediting Bruce with all payments, including the $170, but not with the $60 charged by him as advanced as a gratuity, and not demanded by Sayre, as the $60 may be presumed ts have been bestowed in remuneration for

*Reversal and directions for further proceedings.*

Sayre's trouble and expense in sending to and visiting Lewis county to arrange and settle said bill, also, crediting him with the amounts paid by Morrison, and the $700 paid by Davis, the payments to be credited as the law directs, first in payment of the interest, that a decree may be rendered against Sayre for the amount overpaid. And further, that the Auditor may ascertain and state the rents and profits upon the principles directed by the Circuit Court, also, ascertain and state the amount, with interest, advanced by Alexander, in the payment of the Lodwick and Young executions, in principle or costs, ordinary or extraordinary, taking care to deduct from the whole aggregate of these executions, costs, &c. the amount paid by or out of the funds of John Bruce, directly or indirectly; and that he estimate the interest upon the $1900 paid by John Bruce, from the time of the payment, and state the same, also, estimate and state the amount, with interest, advanced by Morrison in paying to Sayre the amount of his and Andrews' purchases, and that he ascertain and report any other matters which may, in the further progress of the case, be deemed necessary to a final disposition of the cause, not inconsistent with the principles indicated in this opinion; and that the Auditor be allowed to call upon the parties, on oath, if necessary. Decree reversed, &c.

The complainant, John Bruce, is entitled to his costs in this Court.

*Hord* for appellant: *Morehead & Reed, Payne & Waller* for appellees.