CASE 78—ACTION BY KENTUCKY ELECTRIC CO. AGAINST
ALEX G. BARRETT AND OTHERS.—March 12, 1909.

# Kentucky Electric Co. v. Barrett, &c.

Appeal from Jefferson Circuit Court; (Chancery Branch, Second Division).

EMMETT FIELD, Judge.

Judgment of dismissal, plaintiff appeals—Affirmed.

Pleading—Amendment—Sufficiency of Amendment—Under Civ. Code Prac. Section 90, requiring facts which constitute a cause of action to be pleaded, if facts are stated which constitute fraud, the court will give them their legal effect, whether the word "fraud" be used in connection with them or not; and, where a petition, in an action to enjoin a city from executing an ordinance, set up facts showing that the ordinance was not valid on account of irregularities at its passage, and a temporary injunction granted thereunder was dismissed, the irregularities being held not to invalidate the ordinance, an amended petition setting up the same facts, but in addition alleging falsity and fraud, stated no different cause of action, and it was not error to dismiss it upon failure to amend after sustaining a general demurrer thereto.

CARROLL & MIDDLETON for appellant.

HELM & HELM, CHAS. H. SHIELD, A. E. RICHARDS and A. B. BENSINGER for appellees.

No brief—Record out of clerk's office.

OPINION OF THE COURT BY JUDGE BARKER—Affirm-
ing.

The general council of the city of Louisville passed
an ordinance ''creating the franchise or privilege of
stringing and maintaining wires under the streets,
alleys and public places of the city of Louisville and
distributing and selling electricity by means of such
wires, and providing for the sale of said franchise.''
The board of public works were proceeding to exe-
cute this ordinance, whereupon this action was insti-
tuted in the equity division of the Jefferson circuit
court for the purpose of obtaining a judgment per-
petually enjoining them from so doing. Upon motion
of the plaintiff a temporary order of injunction was
awarded by the chancellor, and thereafter the defend-
ants entered a motion before Judge Hobson, a mem-
ber of this court, to dissolve the order. Deeming the
matter of sufficient importance, Judge Hobson re-
quested all of the members of the court to sit with
him upon the hearing of the motion. After full dis-
cussion at the bar of all the questions arising upon
the motion, elaborate briefs were filed by the respect-
ive parties, and thereafter Judge Hobson, with the
concurrence of all the members of the court, dissolved
the temporary injunction, and filed his written rea-
sons for so doing, which are as follows:

''The board of public works of the city of Louis-
ville advertised for bids for a franchise ordered to
be sold by an ordinance of the city. Before the sale
was made under the ordinance, this suit was brought
by the Kentucky Electric Company to enjoin further
proceedings under the ordinance, on the ground that

the ordinance was void.  The chancellor granted the injunction, and this motion is now made before me to dissolve it.  Five grounds are relied on, and these will be briefly disposed of in the order in which they are made.

"It is insisted that the ordinance is void because it was not properly passed by the board of councilmen.  The ordinance was properly passed by the board of aldermen, and was approved by the mayor.  The only ground for objection is as to the proceedings of the board of councilmen.  The president declared the board adjourned, over the protest of a majority of the members of the council, and left the chair.  Thereupon they elected another person to the chair, and proceeded with the business. · After this the session was extended, and the ordinance passed.  At the next meeting of the council the minutes were approved as written.  The council must speak by its minutes, and when the minutes have been approved by the council, in the absence of fraud or mistake charged, and, if denied, proved, the court will not go back of the minutes.  Although the meetings of the council regularly adjourned at 10:30 a majority might extend the session and, when the session was extended, the council had the same power to act as before.  The minutes show that the ordinance was regularly passed, and the facts alleged are not sufficient to invalidate it.

"It is insisted the ordinance is void because it delegates to the board of public works the power to accept the best bid when his can only be done by the council.  If this were a suit to enjoin the purchaser from proceeding under his franchise because the council had not accepted his bid, this objection would

be well taken. But it is not sufficient objection to the validity of the ordinance, for, after the board of public works receives the bids, it should report its action to the council, and the council must exercise its judgment as to which is the best bid. The board of public works cannot grant a franchise. The grant must be made by the council. But the board of public works may advertise for the bids, and may report to the council the result of the bidding. The rights of the purchaser will depend upon the acceptance of his bid by the council; but the plaintiff cannot enjoin the sale of the franchise on this ground, because, until the sale has been made, there is nothing for the council to accept.

"It is insisted that the ordinance excluded bidders, in violation of the Constitution. The words in the ordinance, 'every one in any way connected with either of said companies' mean any one connected with either of said companies in bidding. We think this is the natural meaning of the words, in view of the connection in which they occur, and this construction of the ordinance was at the time put upon it in the advertisement which was made for the bidding.

"It is insisted that the advertisement is so framed that no one save the George G. Fetter Company can bid at the sale, or comply with the terms of the franchise. This contention is based on the idea that at certain points the space under the streets is so taken up by the conduits that other conduits cannot be laid at a reasonable expense, and that by the ordinance the place where the conduits are to be had are indicated by red lines on the map made a part of it, and that these red lines conform to the Fetter conduits.

The fact that it may be expensive to put in the conduits, from the space underneath the street being so occupied, is no reason that the city may not sell the franchise. Were the rule otherwise the constitutional provision providing against exclusive franchises would be of little value. The map referred to is not drawn to a scale. The red lines on the map are not to be understood as indicating the precise location of the conduits, but simply as indicating the approximate location of the conduits, so as to show by the eye exactly what was granted by the ordinance and avoid any misapprehension as to the meaning of the terms used. The map simply serves to illustrate the meaning of the ordinance, and does not require the conduits to be laid precisely where the red lines are.

"It is insisted that the ordinance impairs the obligation of the plaintiff's contract. In the ordinance granting the franchise under which the Kentucky Electric Company holds there are these words: 'Nothing in this ordinance shall be construed as exclusive or as preventing the city of Louisville from granting a like privilege or franchise to any other person, firm or corporation.' This is not a restriction upon the power of the general council, but a restriction upon the franchise granted. The city of Louisville may grant a like franchise or privilege to any other person, or, if it sees proper, it may grant an unlike franchise or privilege to another. There is nothing in the words quoted to create a contract between the city and the Kentucky Electric Company by which the city was bound not to grant any other franchise or privilege different from that granted to the Kentucky Electric Company, and the council, under the Constitution, could not do this if it had attempted to do so.

"* * * The temporary injunction granted by the chancellor is therefore dissolved."

After this written opinion was filed in the circuit court, and the temporary injunction dissolved, the board of public works proceeded to sell the franchise according to their original purpose, with the result that it was purchased by George G. Fetter for the sum of $5,005, which, being duly reported to the general council, sale was approved, and Fetter thereby became the owner of the franchise in question in so far as he could acquire it under the ordinance creating it.    Afterwards the appellant filed an amended petition, by which it undertook to take its cause of action from without the principles enunciated in the opinion dissolving the injunction.    To the petition as amended the appellees (defendants below) interposed a general demurrer, which was sustained by the court, and, the plaintiff (appellant) declining to amend, its petition was dismissed, and from this judgment it has prosecuted this appeal.

It is manifest that the only new questions which could now arise upon the record are those created by the filing of the amended petition.    All of the other questions were directly involved on the motion to dissolve, and were given upon the hearing of that motion the fullest consideration, and disposed of adversely to appellant.    This is notably true of the contention that the ordinance violates sections 51 and 164 of the Constitution, and the question as to whether or not the ordinance under the allegations of the original petition was properly passed.    If either contention of appellant with reference to these questions had been considered sound, the motion to dissolve the injunction would, of necessity, have been

overruled.   They may be now disposed of by saying
that we adhere to our former views as expressed in
the opinion of Judge Hobson.

This leaves in the case, undisposed of, the question
as to whether or not the petition, as amended, states
a cause of action for the injunction prayed for.  This
question is to be answered by ascertaining whether
or not the amended petition adds any substantial
strength to the original petition on the question of
the right of the appellant to go behind the minutes
of the clerk, and show that the ordinance was improp-
erly passed by the council.  What happened on the
passage of the ordinance through the lower board
of the general council was very fully and circum-
stantially set forth in the original petition as follows:
"Plaintiff further states that said pretended ordi-
nance under which the defendants propose to make
said sale is totally void for the reason that it was
never passed by the board of councilmen of the city
of Louisville in the manner provided by law and the
rules of said board; that said ordinance was attempted
to be introduced at a meeting of said board held on
February 7, 1908, but, before same was permitted to
be offered, a motion was made that said board
adjourn, and said motion was put to a vote of the
members of said board by the president, who declared
the same carried, and said meeting adjourned; that
the president thereupon left the chair and the council
chamber, together with a number of other members
of the board, and said session ended.  It states that
certain members of said board remained in said
chamber after said adjournment, and organized a
pretended meeting of said board, and elected one of
the members, who remained president without notice

to those members who had departed, as aforesaid; that at said pretended meeting said ordinance was introduced; that the rules of said board provide that the body shall stand adjourned at the hour of 10:30 p. m., and that in order to extend any session beyond said hour, said rules must be suspended by the affirmative vote of at least two-thirds of the members elected to said board. Said rules are printed in the Sixth Biennial Compilation of General Ordinances of the City of Louisville. It states that said ordinance was not introduced until after 10:30 o'clock p. m. at said alleged meeting, and the rules of said board were never suspended by a two-thirds vote of the members elected to said board, nor was said session extended by a two-thirds vote of said members; that said pretended meeting was not finally organized until after the hour of 10:30 o'clock p. m., and said ordinance was not attempted to be passed until after 11 o'clock p. m.; that said board consists of 24 members; that at no time did more than 13 members, or a bare majority of said board, vote affirmatively on any question at said pretended meeting, or participate therein; that while said pretended meeting was in progress, the president of said board returned to the council chamber, and demanded the right to preside at said meeting, but was refused. It states that the president of the board of councilmen refused to sign the minutes of said meeting, and the same have never been signed, and said president refused to sign said ordinance alleged to have been passed at said pretended meeting, and has never signed the same, nor did the member elected as president of said pretended meeting sign same; that said ordinance was approved by the mayor of said city

and advertised without ever having been signed by any presiding officer of the board of councilmen, although, according to law and the rules of said board, all ordinances must be signed by the presiding officers." The amended petition is as follows: "The plaintiff further states that the minutes of the pretended meeting of the board of councilmen, held on February 7, 1908, are false and fraudulent, and do not correctly or truthfully state or show what was done at said alleged meeting; that said minutes show that the ordinance known as the 'Fetter Franchise Ordinance' was passed at a regular meeting of the board of councilmen, held on said date, when in fact said regular meeting adjourned prior to the pretended passage of said ordinance, and the same was never voted on or passed at any regular meeting of said council, and said minutes do not truthfully state or show what was done at said council, or at said pretended meeting."

It will be seen that the sum total which the amendment adds to the original petition consists in the allegation that the minutes of the clerk are false and fraudulent, and do not correctly of truthfully state or show what was done at the alleged meeting. It further shows that the falsity or fraud complained of consisted in the fact that the minutes did not show the attempted adjournment of the council, and the holding of the special meeting by a majority of the board after the chairman who had sought to adjourn the meeting had left the hall. All of these facts had been set forth in the original petition with the greatest particularity, and we held, upon the motion to dissolve, that they did not constitute such irregularity as invalidated the ordinance. In other words,

we upheld the action of the board as against the
action of the chairman.  We held that a majority of
the board, even after the declaration. of the chair-
man that the board stood adjourned, had a right to
remain, reorganize, appoint another chairman, and
carry on the business of the municipality; that the
action thus taken was valid, and the ordinance, having
been passed in this manner, was valid.  The addition
of the words "false and fraudulent" add nothing to
the original petition; and especially is this true when
the amended petition shows wherein the minutes
were alleged to be false and fraudulent, and these
facts have already been passed upon adversely to
the contention of the pleader.  This appeal is, for all
practical purposes, a rehearing of the motion to dis-
solve already disposed of.

Section 90, Code Civ. Prac., requires the facts
which constitute a cause of action or defense to be,
pleaded, and if facts are stated which constitute
fraud, the court will give them their legal weight,
whether the word "fraud" be used in connection with
them or not.  In Pryse v. McGuire, 81 Ky. 608, it is
said: "On the other idea that the word 'fraud', or
its equivalent, is necessary to the charge of fraud,
we are of a different opinion.  For if the facts be
true as alleged, and they must be so treated on de-
murrer, and Meguiar knew of their existence, and
made material statements to Pryse in conflict with.
them, which misled him, it is not necessary to denom-
inate his acts as 'fraudulent,' for the facts them-
selves state substantive fraud.  Where the facts show
fraud, the law will presume the animus."  In Bruce
v. Morrison, 5 B. Mon. 33, it is said: "Neither usury,
nor mistake, nor fraud is specifically charged, but

though they are not, we have concluded that if the facts charged clearly constitute fraud, that relief ought to be afforded." See, also, Riggs v. Stevens, 92 Ky. 393, 17 S. W. 1016. Newman, in his work on Pleading and Practice (page 263) thus states the rule: "The converse of this rule is equally true. If the circumstances or constitutive facts be alleged, from which the law will necessarily presume the general or material fact to which the law must be applied, it will be sufficient without alleging distinctly the general or legal fact. As a humorous judge has said: "A bear well painted and drawn to life is yet the picture of a bear, although the painter may omit to write over it, "This is the bear." Where the petition is so unskillfully drawn as not to charge expressly fraud, mistake, or usury, yet if the facts stated do nevertheless show either, and the proof will justify it, the court will grant relief."

We conclude, therefore, that the amended petition adds nothing to the weight of the original petition by appending the words "false and fraudulent" to the allegations of the original petition in reference to the passage of the ordinance; that, the facts stated in the latter having been passed upon on the motion to dissolve, we are able to perceive no reason for reversing the judgment of the chancellor, dismissing the petition upon the failure of the appellant to amend after the general demurrer was sustained.

Judgment affirmed.