CASE 42—PETITION EQUITY—November 2.

# Williamstown Graded Free School District v. Webb, &c.

### APPEAL FROM GRANT CIRCUIT COURT.

1. PARTICULAR APPROPRIATION OF COMMON SCHOOL FUND WAS "IN AID OF COMMON SCHOOLS."—An act of the Legislature converting a common school district into a graded free school district, and pro-

Williamstown Graded Free School District v. Webb, &c.

viding for the payment to the graded free school of the *pro rata* of the common school fund going to that common school district, is an appropriation of the common school fund "in aid of common schools," and is, therefore, not in violation of that clause of the Constitution which provides that said fund shall not be appropriated for any other purpose.

2. SUBMISSION OF QUESTION WHETHER GRADED SCHOOL SHOULD BE ESTABLISHED.—Under such an act, which provided that the trustees should take the sense of the voters as to whether the proposed school should be established, the submission of the question as to whether a tax should be levied to establish and support a graded school was a substantial compliance with the statute.

3. SAME—POWER OF TRUSTEES TO FIX TIME OF ELECTION.—The statute fixed a day for submitting the question to the voters, but further provided that the trustees should have power to open a poll, not oftener than once a year, upon the question of establishing the graded school and for the election of trustees until the same should be adopted. *Held*—That the trustees had the power to fix the time for holding any election after the first one, provided they did not open a poll oftener than once a year.

4. CURATIVE STATUTES.—Any mere irregularities in the election under the statute the Legislature had the power to cure by a subsequent statute ratifying the election and the acts of the trustees thereunder.

5. SAME.—A curative statute is valid if it merely dispenses with that which might have been dispensed with by the Legislature at the outset, or if it treats as immaterial that which the prior law might have treated as immaterial.

COLLINS & FENLEY FOR APPELLANT.

1. It is only the "first election" that is required to be held on the first Saturday in June. The time for future elections is left to the discretion of the trustees, with the limitation that they shall not be held oftener than once in two years.

2. The notice of the election was sufficient to put before the voters the time, place and purposes of the election to be held, and in taking the sense of the voters *as to the levy of the tax*, the act was substantially complied with.

3. Even if the election was invalid or irregular, the defect was cured by the subsequent act. (Norman v. Boaz, 4 S. W. R., 816.)

4. Such of the plaintiffs as have accepted the benefits of the act are estopped to resist the tax. (Ferguson, &c., v. Landrum, &c., 1 Bush, 548; Cooley's Const. Limit., p. 181.)

5. The act complained of is not only not within the prohibition of the Constitution with reference to the common school fund, but is in aid of it in many ways. (Fitzpatrick, &c., v. Board of Trustees,

Williamstown Graded Free School District v. Webb, &c.

of Mt. Sterling Public Graded School, &c., 9 Ky. Law Rep.; Trustees v. Harrodsburg Educational District, 7 S. W. R., 312; Norman v. Boaz, 4 S. W. R., 316.)

The cases of Halbert v. Sparks, 9 Bush, 259, and Collins v Henderson, 11 Bush, 74, are not opposed to this conclusion.

M. D. GRAY, R. L. WEBB, WM. CARNES FOR APPELLEES.

1. The law in contest, in so far as it attempts to deprive Common School District No. 1 of its money and its property, without providing a school where common school education is required to be taught, is unconstitutional. (Halbert v. Sparks, 9 Bush, 262; Collins v. Henderson, 11 Bush, 74; Auditor v. Holland, &c., 14 Bush, 147.)

The cases of Trustees of Harrodsburg v. Board of Education of Harrodsburg, 9 Ky. Law Rep., and Newman v. Thompson, 4 S. W. Rep., 341, distinguished from this case.

2. The election was not held at the proper time, nor was the question as to whether the voters were in favor of establishing a graded free school submitted to them. The question submitted was, whether they were in favor of a tax of fifty cents?

3. The trustees had no right to take the assessor's book for 1886 as the basis of their levy. The book returned December 15, 1887, should have been made the basis.

4. The plaintiffs are not estopped by reason of the fact, if it be a fact, that they have accepted the benefits of the act. They had no agency in procuring the passage of the act, and have the right, at any time, to question its constitutionality. (Gardner v. Boston, 106 Mass., 549; 25 Mich., 456; 22 Mich., 104; 56 N. Y., 257; 34 Wis., 381; 29 Wis., 419; Loan Association v. Topeka, 20 Wall., 655.)

5. A curative statute can not make valid an election, or the levy of a tax which is absolutely void. (Norman v. Boaz, 4 S. W. Rep., 316.)

WM. LINDSAY ON SAME SIDE.

1. The vote taken was void because not taken at the proper time. There was no authority to take such vote on any other day than the first Saturday in June.

2. No question could be lawfully submitted except whether the graded school should or not be established. The vote in favor of levying the tax was not a vote in favor of establishing the graded school.

3. When the act of 1887-8 was passed, the graded school act of 1884 was not, and never had been, in force. Therefore, there was no election of trustees to validate; and if the General Assembly could not have made the appointment of the trustees by the original act, it could not, by an act in the nature of a curative statute, work out their appointment. (Norman v. Boaz, 8 Ky. Law Rep., 129; Cooley's Const. Limit., 463.)

4. While the General Assembly may select its own officers, and such as are charged with the preservation of its books and papers, or of the public buildings in which its sessions are to be held, or the public property directly connected therewith, it can not appoint any other officers, whether general or local, as that is the constitutional prerogative of the people, or of the Executive Department of the government. (Taylor v. Commonwealth, 3 J. J. Mar., 405.)

JUDGE HOLT DELIVERED THE OPINION OF THE COURT.

The Legislature, by an act approved April 15, 1884, provided for the establishment of a graded free school in Williamstown in lieu of common school district number one of Grant county, and to include the same territory. (Vol. 1, Acts 1883-4, page 1292.) Among its other provisions, as amended by a subsequent act, it authorized the trustees of the then existing district, after giving certain notice as to time, place and purpose, to hold an election on the first Saturday in June, 1884, to take the sense of the voters as to whether the proposed school should be established; and to also then vote for six trustees therefor, who should prescribe the qualifications of its teachers, select them, and in all other respects have exclusive control of the district. They were also authorized to levy an annual tax upon the property of the district, not exceeding fifty cents upon the hundred dollars, to carry out the purpose of the law, the amount of it to be entered upon the order-book of the Grant County Court "as soon as practicable each year after the county assessor shall have returned his assessment of the property in said county." All the property of the old district was to vest in the new one, and the trustees of the latter, in case of its establishment, were authorized to draw the district's *pro rata* of the common school fund, it to

be used only for the payment of the teachers; and to this end the trustees were to ascertain the number of children within the school age in the district, and report the same to the common school commissioner of the county, to be by him reported to the Superintendent of Public Instruction. It was further provided by the twentieth section of the act: "The trustees of the common school in district number one in Grant county shall have power to open a poll, not oftener than once every year, upon the question of establishing this district, and the election of trustees as hereinbefore provided for, until same shall be adopted; and no other election shall be held by them, but all subsequent elections, upon any and all questions, shall be held by the board of trustees hereby created." * * * *

An election was held in conformity to the law on the first Saturday in June, 1884, resulting in a majority voting against the establishment of the school. Another election was had in 1887 with a contrary result. It was not held on the first Saturday in June, however, but upon the second day of July, that time having been fixed by the trustees of the then existing district for the election. Nor was the question then submitted to the voters in the language of the law, whether or not they were in favor of establishing a graded free school, but whether they favored a tax of fifty cents upon each one hundred dollars of property for such a purpose. The trustees who were then elected levied the said tax on July 11, 1887, basing it upon the assessment returned by the county assessor in December, 1886.

These suits were brought by some of the tax-payers

of the district, enjoining the collection of their portion of the tax by sales of their property. They insist that the act of the Legislature is unconstitutional, and, therefore, void; that it abolishes their common school district; diverts its portion of the common school fund improperly; transfers its property to another corporation, and provides for the establishment of a school which is not "a *common* school" within the meaning of the law, and, if mistaken in this, that then no valid election was ever held, and those claiming to be trustees had no power to levy the tax.

Some preliminary questions were made by the appellants in the form of motions to dissolve the injunctions and special demurrers to the petitions, but they did not reach the substance of the controversy, and in view of the conclusion reached by us as to it we need not consider them. The question of the constitutionality of the law is important. It involves upon the one hand the existence of our graded schools and upon the other the protection of our common school system, which has for years been the pride of the State, as it furnishes to the indigent children of our Commonwealth the means of obtaining an education without cost. Prior to the adoption of our present Constitution our common school system was at times in peril. It seemed about to be deprived of a fund for its support. It was, therefore, provided by section 1, article 11, of that instrument: "The capital of the fund called and known as the 'common school fund,' * * * together with any sum which may be hereafter raised in the State by taxation or otherwise for purposes of education, shall be held inviolate for the purpose of sustaining a sys-

tem of common schools.   The interest and dividends.
of said funds, together with any sum which may be
produced for that purpose by taxation or otherwise,
may be appropriated in aid of common schools, but for
no other purpose."

Thus, by the organic law, the school fund was de-
voted to one purpose.   The Legislature has no power
to divert it to any other.   It must be used "in aid of
common schools."   If, however, this expression were
construed to. include any purpose which might inci-
dentally aid them, the fund might soon be frittered
away, and the purpose of the framers of our Consti-
tution not only be defeated, but our school system
crippled, if not destroyed.

Looking, therefore, to the history, design and scope
of this constitutional provision, it was properly de-
fined in the case of Collins v. Henderson, 11 Bush,
74, to mean aid in defraying the expenses of schools
actually kept according to law, to-wit: those under the
control of trustees, kept by a qualified teacher, and
which every child in the district within the school
age, whether contributing to its expenses or not, might
attend.

Guided by this rule, which is unquestionably the
proper one in a government resting for its strength
upon the intelligence of the people, let us see if the
proposed school can fairly be said to be in aid of our
common school system.

The title of the act is, "An act to establish and
maintain a graded *free* school in Williamstown, Grant
county."   The first section of it also declares that the
purpose is to establish "a graded *free* school," and

that the territory therein named "is hereby constituted a *common school district.* * * * * The corporate name thereof shall be known as the Williamstown Graded *Free* School District." All the children of the district within the school age are to have the privilege of attending free of charge, and the proceeds of the property obtained from the old district are to be applied for "said school purposes."

The school is to be under the charge of trustees, who, in certain matters named in the act, are to report to the common school officers of the State. It is true they are, by its terms, to prescribe the course of study and the qualifications of its teachers; select them, and for that purpose appoint examiners; but the Legislature certainly has the constitutional power to so provide, and their doing so does not deprive the school of its common school character. If the Legislature can declare that a person shall be qualified to teach a common school, who has a certificate to that effect from a county commissioner or some other person, it can equally provide that the trustees of this school shall pass upon his or her qualifications.

In our opinion, the act is not in conflict with our common school system, but in aid of it. The school is essentially "a common school." There is no danger, as is suggested, of its being converted to a character foreign to a common school. The law expressly declares that the boundary included in it is made "a common school district." This being so, the trustees are officers of "a common school," and the school fund is not devoted, as was the case in Halbert v. Sparks, 9 Bush, 259, to the payment of teachers not under the control of such officers.

The answer of the appellants must be taken as true, as the case went off upon demurrer. It avers that the course of study prescribed by the trustees includes the common school course of study, and that it is being taught in the school. The fact that academic or higher branches are also taught should not deprive it in law of its common school character. It is rather to be commended, because a means for an advanced education at home is thereby afforded to the children.

In the case of Trustees of Harrodsburg v. Harrodsburg Educational District, decided by this court on December 1, 1887, an act transforming an ordinary common school district into a graded one was sustained as constitutional.

It is urged, however, that there was no valid election of trustees, or whether the voters of the district would accept the provisions of the law, and establish the school. If this be true, then those professing to be the trustees had no more right to levy the tax than any other individuals.

It is not claimed that the notice of the election held on July 2, 1887, was not sufficient, save that it was not sufficiently descriptive. It notified the voter that it would be held for the purpose of determining whether the tax should be levied to establish and support a graded school, instead of saying, in the language of the act, that it was for the purpose of determining whether it should be established. In our opinion, however, this was a substantial compliance with the law. The voter could not well have misunderstood the purpose of the election. So, too, the submission of the question to him when voting, whether he was

for or against the tax to establish the school, was, in substance, a submission to him of the question, whether he was for or against its establishment. One of but little intelligence would have so understood it. The Legislature had the power to establish the school without the approval of the voter. The act, however, subjected him to the liability of taxation, and for this reason, likely, his acceptance of its provisions was a condition precedent to its becoming operative.

The seventh section of the act fixed the time of the first election that might be held only. The twentieth section *supra* provides for future ones. It does not say when they are to be held, save the limitation of "not oftener than once every year," and, in our opinion a fair construction of the act left this to their discretion, subject to the limitation named.

This being our conclusion, it is unnecessary to consider what is called the curative act of the Legislature of March 26, 1888, by which it purported to ratify and confirm the election of July 2, 1887, and the acts of the trustees then elected relating to the levy of the tax and the organization of the school. (Vol. 2, Acts 1887-8, page 443.) It is not out of place to say, however, that the Legislature had this power as to any mere irregularities attending the election. If, however, it had been void, it would have been beyond cure. The rule is, that if the thing wanted or omitted might have been dispensed with by the Legislature at the outset, then it may do so by a statute enacted subsequent to the proceeding which is assailed on account of the omission. If the irregularity consists in doing some act, or in the manner of doing some act,

which the Legislature might, by the prior law, have treated as immaterial, then it may make it immaterial by a subsequent law. (Cooley's Con. Lim., page 458.)

By the revenue law enacted May 17, 1886, the county assessor must begin to make his assessment by the fifteenth day of September in each year, and complete the list and return it to the county court clerk by the fifteenth day of December. (Vol. 1, Acts 1885-6, page 162.) It is the assessment for the succeeding year. It is the list upon which the taxation for the subsequent year is based, and it was, therefore, proper for the collector of the tax now in question to adopt the assessment made in 1886 as the basis for its collection.

The judgment below enjoining the collection of the tax from the appellees is reversed, with directions to overrule the demurrers to the answers, and for further proceedings consistent with this opinion.