CASE 74—MANDAMUS AND INJUNCTION—December 17.

## Riggs, &c., v. Stevens, County Judge.
## Garvey, &c., v. Dulaney, &c.

APPEALS FROM KENTON CIRCUIT COURT.

1. COMMON SCHOOLS—CONSTITUTIONAL LAW.—Legislation providing for the conversion of an ordinary common-school district into a free graded-school district, and the payment to the latter of the *pro rata* of the common-school fund going to the common-school district, is constitutional, because it is in aid of our common-school system.
2. ELECTIONS—IMPEACHMENT OF CERTIFICATE FOR FRAUD OR MISTAKE. —In the case of an election to take the sense of the voters of a county or district upon the question of the imposition of a tax for a special purpose, if the examining board through fraud or mistake make a false return, a court in the exercise of its equitable powers may correct the wrong.
3. SAME—PLEADING.—In order to impeach a certificate for mistake it is not necessary to allege in so many words that there was a mistake; it is sufficient to set forth facts showing the mistake.
4. ESTOPPEL.—A tax-payer does not waive his right to object to the exaction of an illegal tax by remaining silent while debts are being incurred and improvements made upon the faith of the tax.

HALLAM & MYERS FOR APPELLANTS.

1. One who stands idly by and allows the voting of a tax and the expenditure of money on the faith of such vote is estopped to question the regularity of the proceedings by which the tax was voted. (Kerr on Injunctions, 16; High on Injunctions, secs. 549, 554; Preston v. Roberts, 12 Bush, 590.)

2. A tax for graded schools is not in derogation of the common-school law nor in violation of the Constitution. (Trustees of Harrodsburg v. Educational District, 11 Ky. L. R., 607; Williamstown Graded, &c., v. Webb, 11 Ky. L. R., 458.)

3. Where there are no means provided for contesting an election, the final result as certified by those holding the election determines the issue. (Howland v. Eldredge, 43 N. Y., 457; Clark v. Rogers, 81 Ky., 47; Trustees v. Gavey, 80 Ky., 164; Hall v. Marshall, 80 Ky., 556; Leeman v. Hinton, 1 Duv., 37; Anderson v. Com., 14 Bush, 171; Commissioners of Knox County v. Aspinwall, 21 How., 539; Pendleton County v. Amy, 13 Wall.; City of Lexington v. Butler, 14 Wall.; Foster v. Shreve, 6 Bush, 530; Meriwether v. Lewis, 9 B. Mon., 180; Lyne v. Bank of Ky., 5 J. J. M., 569.)

WILLIAM GOEBEL FOR APPELLEES.

Where the law requires that a majority of all the voters in the district shall vote in favor of the tax before it can be levied, the petition must allege that a majority did so vote, and, if denied, must be proved. (McCrary on Elections, sec. 458.)

CHIEF JUSTICE HOLT DELIVERED THE OPINION OF THE COURT.

These two actions involve substantially the same questions. They will therefore be considered together.

One seeks by mandamus to compel the common-school Commissioner of Kenton county to pay to the trustees of the Erlanger Graded Free School District a *pro rata* portion of the common-school fund in his hands for that county derived from the State. The other enjoins, upon behalf of certain tax-payers, the collection from them of a tax which it is claimed had been voted for the establishment of the school. The lower court dismissed the action for a mandamus and enjoined the collection of the tax.

It has been frequently decided by this court that legis-

lation providing for the conversion of an ordinary common-school district into a free graded one, and the payment to the latter of the *pro rata* of the common-school fund going to the common-school district, is constitutional, because it is in aid of our common-school system, and not a diversion of the fund devoted by our Constitution to that purpose. (Trustees Harrodsburg v. Harrodsburg Ed. District, 9 Ky. Law Rep., 605; Williamstown Graded F. S. District v. Webb, &c., 89 Ky., 264.)

It is claimed that no tax for the establishment of the school has ever been voted in conformity to the general law, approved May 4, 1888, under which the election was held. (Acts 1887-8, vol. 1, p. 194.) This is necessary under the law for its establishment. The purpose of voting a tax as declared by the act is to establish and maintain the school.

Only the legal white voters can vote at the election. Whether it be an *ad valorem* or a poll tax, or both, its collection is therefore confined to the white voters. Sections 5 and 16 provide:

" If it shall appear that a majority of the legal white voters entitled to vote at said election, under the common-school laws of this State, cast their votes at the said election in favor of said tax, then it shall be the duty of the county judge to cause the certificate of the Examining Board, showing the amount of the tax voted, the amount for which bonds may be issued, and the names of the six trustees elected, to be entered of record in the order-book of his court, and by and with the assistance of the county superintendent of common schools in said county, to organize a graded free school in said district, town, or city, in accordance with the provisions of this act.

"The county superintendent for common schools shall annually pay to the treasurer of any graded free-school district that may be organized and operating in his county, in conformity with this act, the *pro rata* portion of the *per capita* of the State and county funds that may be the due of said district, according to the number of pupils therein between the ages of six and twenty years of age, as soon as the same shall come into his hands."

The petition in the mandamus case avers that at the election " it *appeared* that a majority of the legal white voters " voted for the tax, which in this instance was an annual *ad valorem* one of fifteen cents upon each one hundred dollars' worth of property.

Waiving whether this amounts to an averment that a majority did vote for it (and even if it does not the defect is cured, because the answer denies they did), yet the answer sets out affirmatively that thirty-three or thirty-four votes were cast for it, twenty-six against it, and ten voters, whose names are given, did not vote. No reply was filed; and by reason of the *non*-denial of the statements of the answer it stands admitted that " a majority of the legal white voters entitled to vote at said election " did not vote for the tax.

The petition in the injunction case avers they did not. The answer denies it; but that the petition states the truth is proven beyond doubt.

The certificate returned by the Examining Board of the election, however, recites : "It appearing that a majority of the legal white voters entitled to vote at said election under the common-school laws of the State cast their votes at said election in favor of said tax, * * * the same is hereby certified to the County Judge of Kenton

County, to be entered of record in the order-book of his court." This was done; and it is now insisted upon the one side that this certificate can not be impeached, but is entitled to absolute verity, although in truth and fact a majority of the voters did not vote for the tax.

It is urged upon the other side that the strict rules governing elections generally do not apply in case of one appropriating money in aid of internal improvements or of schools; and if the law authorizing it does not provide specially how it is to be ascertained whether the required majority have voted for the tax, that then the certificate of the Examining Board is not final, and the matter is open to investigation in the courts.

Undoubtedly it is the general rule, and one necessary to a safe governmental policy, that a chancellor will not by himself or his commissioner undertake to investigate the legality of votes or purge the poll-books, and, if the result of the investigation differs from the return of the judges of the election, reverse it. If, however, there has been fraud or mistake upon the part of those conducting an election special in its character like this one, equity will, at least in such a case, permit an investigation, and, if the mistake or fraud appears, grant relief.

It is said in McCrary on Elections, page 390: " Cases may, however, arise which do not present the question which of two persons is entitled to an office, and which are in their nature unlike an ordinary contest. For example, a vote of the people of a county may be taken upon the question of the location or removal of a county seat; or upon the question of subscribing to the capital stock of a railroad company; or upon subscribing or appropriating money to aid any work of internal improve-

ment; or by the people of a city or town upon the question of adopting a charter; and it may happen that the modes of proceeding provided by statute or by the common law for contesting elections or trying the title to an office are altogether inapplicable to the determination of questions of fraud, accident, or mistake in the conduct of such elections as these. In all such cases equity will afford relief."

The authorities are somewhat conflicting as to the proper limit of the rule; but it should certainly be extended so far that if, in an election like this one, the Examining Board, through fraud or mistake, make a false return, a court in the exercise of its equitable powers may correct the wrong.

Section 17, chapter 81, of our General Statutes, provides: "Unless in a direct proceeding against himself or his sureties, no fact officially stated by an officer in respect of a matter about which he is by law required to make a statement in writing, either in the form of a certificate, return, or otherwise, shall be called in question, except upon the allegation of fraud in the party benefited thereby or mistake on the part of the officer."

In the injunction case it is proven by the three members of the Examining Board that so far as their certificate states a majority of the legal voters of the district voted in favor of the tax, it was a mistake upon their part. This fact is averred in the petition, and though denied, yet, as just stated, it is proven.

In the mandamus case it is not stated in so many words that it was a mistake. This is, however, not necessary. It is sufficient if the facts showing it are set forth. The answer states how many voted *pro et con* for the tax, and

how many failed to vote, giving their names, and all this is admitted by the failure to deny it. It necessarily follows from this averment that the statement of the certificate was made either through fraud or mistake. This is a necessary inference from what is pleaded.

It is therefore averred and proven in the one case, and averred and admitted in the other, that the statement in the certificate is untrue and was made by mistake. Under this state of case a court can certainly afford relief.

It is said, however, it is averred and not denied that the tax-payers knew debts were being incurred and improvements made upon the faith of this tax, and that they are therefore estopped to question its validity.

This is not a case where the tax-payer has stood mute until an improvement has been made from which he will receive a direct benefit, as in the case of the improvement of a street abutting his property, and then for the first time raises his voice against contributing his equitable portion of the cost.

It is true it is to the interest of all that the children of the State shall be educated; but this is not such a direct interest that the tax-payer, by mere silence while the expenditure to this end is being made, waives his right to object to the exaction of an illegal tax. It is not so far his duty to speak that he will not afterward be heard when it is attempted to compel payment. It is not such silence as amounts to fraud, and this is the foundation of estoppel upon this ground. If it be said that gain or advantage to a person is not necessary to the creation of an estoppel as to him, yet these tax-payers by their mere silence have not so acted, either by way of influencing the conduct of others or deriving benefit themselves, as to prevent their now being heard.

The judgment in each case is affirmed.