CASE 61.—ACTION BY THE BOARD OF TRUSTEES OF THE
          COLUMBIA GRADED COMMON SCHOOL AGAINST
          W. F. JEFFRIES AND OTHERS IN WHICH CERTAIN
          OTHER PERSONS INTERVENED.—November 19,
          1909.

## Jeffries, &c. v. Board of Trustees, &c.

Appeal from Adair Circuit Court.

H. C. BAKER, Circuit Judge.

Judgment for plaintiffs, defendants appeal.—Affirmed.

1.   Schools and School Districts—"Common Schools."—Graded
     schools are "common schools."
2.   Elections—Qualification of Voters—Sex—School Elections.—
     Ky. St. 1909, Secs. 4464-4500a, relating to graded common
     schools, provides no qualification for voters in graded school
     district elections except the qualification provided generally
     for school elections, in view of which it has been held that
     the qualifications are the same, and that under section 4458,
     providing that, in a common school district election to levy
     a district tax for common schools, any resident widow or
     spinster, who is a taxpayer, or who has children within school
     ages, may vote, such persons may vote upon the question of
     tax for a graded school in a proposed graded common school
     district.  Act March 24, 1908 (Acts 1908, p. 133, c. 56), estab-
     lishes in some particulars a radical departure from the pre-
     existing system, but without any design to render the sys-
     tem as a whole inharmonious, and provides that graded com-
     mon school districts operating under special charter or es-
     tablished by popular vote in school districts operating in mu-
     nicipal districts established under special charter, and supple-
     menting the state school fund by a local tax of a certain
     amount, shall retain their present boundaries and be exempt
     from the provisions of the act.  Held, that the effect of the
     prohibition of the act of 1908 was to re-enact sections 4464-
     4500a as part thereof, and the graded common school districts
     operating under special charter or established by popular vote

Jeffries, &c. v. Board of Trustees, &c.

remained unaffected by the later law in their boundaries, government, and regulation; but the later act. providing that all resident males' over 21 years of age shall have the right to vote at elections, women are no longer entitled to vote in graded common school elections.

3.   Schools and School Districts—Levy of Tax—School Election—
Manner of Voting.—Ky. St. 1909, Sec. 4467, relating to the voting upon the question of establishing a graded common school and a tax to maintain it, provides that on the day set apart for the election the officers shall open a poll and propound to each voter the question, "Are you against or for the graded common school tax?" and his vote shall be recorded for or against the same as he may direct, which has been held to require a viva voce vote on the subject of taxation. Act March 24, 1908 (Acts 1908, p. 133, c. 56), which in effect re-enacted the former act, as a part of the latter act, makes no provision as to how the votes shall be taken, whether by ballot or otherwise though in an election for trustees, voting by special ballot and the manner of preparing and furnishing the ballots are all provided for. Held, that the intent was that the vote on the question of the tax should be viva voce.

4.   Schools and School Districts—School Election—Irregularities.
—Ky. St. 1909, Sec. 4467 (Russell's St. Sec. 5739), provides that an election upon the question of a tax for the establishing and maintaining of a graded common school there shall be one judge and a clerk. Act March 24, 1908 (Acts 1908, p. 133, c. 56), for the government and regulation of common schools, which re-enacted in effect the former act as a part thereof, provides that two judges and a clerk shall be appointed by the county election commissioners. At such an election the sheriff appointed a judge and clerk, and the county election commissioners ratified the appointment and appointed one additional judge. He failed to act, and his place was filled by another. Held, that, as nothing done by the substitute affected the result, and there being no claim that the regular judge and clerk did not of their own judgment and action do all that the substitute is claimed to have attempted to do, his participation was, at most, a harmless irregularity.

5.   Evidence—Judicial Notice—Location of High School.—The court will take notice of the location of the Columbia Male and Female High School building in the town of Columbia.

6.   Elections——School Elections—Petition—Sufficiency.—Ky. St. 1909, Sec. 4464, relating to elections upon the question of a tax for the establishing and maintaining of a graded common school, provides that the petition for the election shall indi-

cate with exactness the location and site of the schoolhouse, meaning the schoolhouse that will be provided for the proposed graded common school. Held, that the intent was to settle as nearly as might be the location of the proposed building, and a petition, stating that the "location of the school house * * * shall be at the building known as the Columbia M. & F. High School, if it can be secured upon terms satisfactory to the trustees who may be elected in said proposed district, or at some other suitable point within the corporate limits of the town of Columbia," was sufficient; the other words of the description being treated as surplusage.

7. Elections—School Elections — Petition—Sufficiency—"Other Expenses Needful in Conducting a Good Graded Common School."— Ky. St. 1909, Sec. 4464, provides for an election upon the question of levying a tax to maintain a graded common school and for erecting or repairing suitable buildings therefor, if necessary. Section 4481 (section 5758) makes it the duty of the district trustees to provide funds for purchasing suitable buildings, or for erecting or repairing them, and for other expenses needful in conducting a good graded common school, and permits them to use such part of the proceeds of the tax as they may deem necessary. Held, that the phrase "and for other expenses needful in conducting a good graded common school" implies the power to rent a suitable building temporarily and until one can be secured or built by the trustees, and a petition for the election, reciting that the proposed tax was to be used for the purpose of maintaining a graded common school and for the erecting, purchasing, leasing, and repairing of suitable buildings therefor if necessary, was no more than the two sections of the statute authorized, meaning that the trustees were to buy a building, if they could, and, if not, to buy a lot and build a house, to repair any buildings bought or built by them, and in the meantime to lease a suitable building for the continuation of the school, and did not render the petition insufficient.

8. Schools and School Districts—District Property—Power of State.—The maintenance of public schools is a state question done in the exercise of the state's sovereign power, and where the state authorized the application of public lands to build an academy for public education, and subsequently let the town sell the academy and lot and use the proceeds in paving its streets, the Legislature could require the town to reimburse the state by buying another lot for common school purposes, and, the town having done so without complaint, its subsequent holding of the title, as required by

Jeffries, &c. v. Board of Trustees, &c.

the Legislature, was a naked trust which the Legislature could end at its will, and it having provided by Ky. St. 1909, Sec. 4484, that the title of all common school property in the limits of a graded common school district organized under the provisions of the act shall be vested in the board of trustees of the school dictrict and empowered them to sell the same if they should think it best, the trustees could convey a good title thereto to their grantees.

9. Schools and School Districts—Purchase of Property—Discretion of Trustees.—The discretion of trustees elected upon the establishment of a graded common school district, as to buying a particular property for the school, which property the petition for election specified should be procured, if expedient, will not be interfered with by the courts, at least in the absence of such proofs of abuse as would be tantamount to fraud.

ROLLIN HURT for appellants.

JAS. GARNETT and W. W. JONES of counsel.

## CLASSIFICATION.

1. The location and site of the proposed school house in said district must be stated with exactedness in the petition to the County Judge and if this is not done the Court had no jurisdiction to order an election and such an election is void. Kentucky Statutes, Section 4464.

(a) The power to tax is a high Govermental power and where the Legislature grants this power to another tribunal it can only be exercised in strict conformity to the terms in which the power is granted and a departure in any material part will be fatal to the attempt to exrcise it. Campbell County Court v. Taylor, 8 Bush, 208; B. G. & M. R. R. Co. v. Warren County Court, 10 Bush, 724; Doores v. Varnum, &c., 94 Kentucky, 508.

2. The statute confers no power to levy a tax for the purpose of leasing buildings for graded common school purposes. Kentucky Statutes, section 4464; Kentucky Statutes, section 4437.

3. The officers and pretended officers of the election and the partisans of the tax conspired together and fraudulently permitted 8 persons who were not legal voters to vote for said tax and prevented 30 widows and spinsters who were legal voters from voting against the tax—a number more than sufficient to have entirely changed the result and in that way made a false return of the result.

(a) The ascertainment of the will of the people of a district in relation to a tax proposed to be levied for school purposes is not an election but merely the action of the agency selected by the Legislature to determine when and to what extent the conditional statute shall become operative in the District. Marshall v. Donovan, &c., 10 Bush, 68.

MONTGOMERY & MONTGOMERY attorneys for appellees.

### PROPOSITIONS SUBMITTED AND AUTHORITIES CITED.

1. An election establishing a graded school can not be contested, and technical irregularities will not vititate it. Patterson v. Knapp, 128 Ky., 474; Clark v. Rogers, 81 Ky., 43.

2. Such elections can not be questioned collaterally as is attempted here. Hopkins v. Swift, 100 Ky., 14; 98 S. W., 1002.

3. Burden is on party attacking such election to show that it was void, and necessary facts must be stated. Trustees Common School District No. 88 v. Garner, &c., 80 Ky., 159; 14 Ky. Law Rep., 240; 24 Ky. Law Rep., 576.

4. The election was not void. The law was complied with in letter and spirit. Ky. Statutes, sections 4464, 4467, &c.; Grabbs Amended School law, subsec. 3, section 93, page 58; Grider v. Farmers' & Drovers' Bank, 12 Bush, 333; Anderson v. Winfrey, 85 Ky., 597; 1 Ky Law Rep., 199-274; 10 Ky. Law Rep., 167; 3 Dana, 160; 4. B. M., 394; Hardin, 104; 1 Monroe, 140; 108 S. W., 289.

5. The school house and lot involved in this action known as school house in district No. 29, is common school property. The trustees of the town of Columbia have no interest in it. The deed from C. J. Taylor and wife vested the title in the Common School District, No. 29. That part of section 4484, Ky. Statutes, that relates to Seminary property vested in trustees for the purpose of education has no application to this case.

OPINION OF THE COURT BY JUDGE O'REAR—Affirming.

This action was brought by the trustees of the Columbia Graded Common School against the town of Columbia, its trustees, and the board of education of Adair county, to quiet the title of the plaintiffs to the school house and lot in Columbia, which was known as "common school district No. 1" (formerly

No. 29).   The town of Columbia is of the fifth class. It was embraced in parts of two school districts.   A petition of the requisite number of electors and property holders resident of the two school districts was presented to the county court, asking the submission of the proposition whether the two districts would avail themselves of the provisions of the statutes allowing them to establish, in lieu of the district common school therein, a graded common school, and whether a tax necessary to procure a suitable building should be voted by the electors of the proposed graded school district.   The proposition was ordered submitted.

At the election the officers returned, and the canvassing board certified, that both propositions had carried by a majority of the votes cast, and that appellees were elected trustees of the graded school district.   The newly elected trustees, deeming the old school building in district No. 1 inadequate, proposed to sell the building, and to buy another.  Certain citizens opposed the proposition, claiming that the vote by which the graded school was established was void, as was the vote by which the tax was authorized, and that the election of the trustees was void.   They also denied that the trustees, even if the elections were valid, took the title to the school building and lot, or had power to sell it, or to invest the proceeds or any taxes raised to the purchase of the proposed site.   The result was that the title of the plaintiffs to the lot they proposed to sell was so clouded that purchasers were deterred from bidding, and the contention of the dissident taxpayers clogged the action of the trustees so as to defeat their purposes.   The plaintiffs asked that their title to the lot in question be quieted by the judgment of the court, and inas-

much as the legal title appeared to be vested in the trustees of the town of Columbia, who refused to join in the sale and conveyance, that the lot be sold by the court's commissioner, and the proceeds turned over to the plaintiffs.

The board of education disclaimed any property interest in the subject of controversy, as well as any denial of the plaintiff's title and authority in the premises. The trustees of the town by demurrer raised the question of their title; the facts being set out in the petition. Certain citizens and taxpayers of the proposed school district, who are appellants here, filed their intervening petition, alleging that the trustees of the town would not defend the action, being favorable thereto, and asked permission to defend on behalf of themselves and all other taxpayers concerned. Their petition was allowed. As defense they relied upon certain facts as showing that the elections were void, and that in any event the graded school trustees were not invested with the title to the lot in question. They also assailed the wisdom of the contemplated purchase of the other lot. A general demurrer was sustained to their answer because the facts stated did not present a defense to the cause of action set up in the plaintiff's petition, and, as they declined to plead further, the allegations of the petition were taken as true, and judgment rendered in conformity to its prayer. The trustees of Columbia and the interveners appeal from that judgment.

It is contended by appellants that the election by which the graded school proposition, including the tax proposition, was voted, was so irregular as that it was void. The irregularities relied on are: (1) That the petition of the county court did not show the location of the site of the graded school building with

exactness, as required by the statute; (2) that the tax proposition included the leasing of a building, whereas the statute allows only the purchase or erection of a building; (3) that the election submitting the tax and district propositions was not held by secret ballot, whereas it should have been; (4) that the election of trustees was by secret ballot, whereas it should have been viva voce; (5) that one acted as judge of the election without appointment or authority and fraudulently interfered in its conduct; (6) that legally qualified voters were prevented by fraud of the officers of election from voting, who would have voted against the propositions, and others not legally qualified voters were permitted to vote who voted for the propositions, the result of the election being changed by the combined actions referred to. As the facts were pleaded, either in the petition of the plaintiffs, or the answers of the interveners, the question presented was one of law; no issue of facts being raised by the pleadings.

The elections were held under the provisions of article 10 of chapter 113, Ky. St., relating to graded common schools (section 4464 et seq., Carroll's Ky. St. The provisions of that article are part of the common school law of the state, and are part of the original act of 1893 for the government of common schools. Graded schools are common schools. Riggs v. Stevens, 92 Ky. 393, 17 S. W. 1016, 13 Ky. Law Rep. 631; Trustees Harrodsburg v. Harrodsburg Ed. District, 7 S. W. 312, 9 Ky. Law Rep. 605; Williamstown Graded F. S. District v. Webb, 89 Ky. 264, 12 S. W. 298, 11 Ky. Law Rep. 456. In 1908 the Legislature adopted new provisions concerning the establishment of district schools. Act March 24, 1908 (Acts 1908, p. 133, c. 56). Much of the confusion in

this case has arisen out of what is conceived to be the different methods of holding elections in common school matters, and the qualifications of voters at elections affecting graded schools. We will consider that question first. The statute does not define the qualifications of the voters at graded school elections. They are alluded to merely as "the legal white voters in said proposed graded common school district." In section 4469, Ky. St. (Carroll's), it is provided: "The graded common schools, when organized as aforesaid, are hereby incorporated, and each of them shall be under the management and control of a board of six trustees. The first board to be elected at the same time and place, and by the same persons who vote at the election for the tax, as provided in sections 4464 and 4467 of this law, and the six persons receiving the highest number of votes shall be declared elected." The allusion to the qualifications of voters contained in section 4464 has already been quoted above. In section 4467 the reference is merely to "each voter who may vote." Under these provisions it was held, in Sisk v. Gardiner, 74 S. W. 686, 25 Ky. Law Rep. 18, that women who were spinsters or widows were legally qualified voters in graded school elections. Nothing in the article concerning graded common schools expressly gave women the right to vote in those elections. The provision of section 4458, Ky. St., was looked to. That provision is contained in the subdivision of article 94 of chapter 113, relating to "district taxation."

In Lee v. Trustees Shepherdsville Graded Common School District No. 4, 88 S. W. 1071, 28 Ky. Law Rep. 55, it was held that an election for graded school trustees and for voting a bonded indebtedness, held between the hours of 1 o'clock p. m. and 6 o'clock

p. m., was a literal compliance with the law, yet there is nothing in article 10 on that subject. Section 4434, Ky. St., being part of article 8 of chapter 113, dealing with "district trustees," and as to the time and manner of their election, provides that the election should be viva voce, and held at the schoolhouse of the district between the hours of 1 o'clock p. m. and 6 o'clock p. m. on the day fixed, and that "at this election the qualified voters of the district shall be the electors; and any widow having a child between six and twenty years, and any widow or spinster having a ward between the ages of six and twenty years may also vote." See, also, Moss v. Riley, 102 Ky. 1, 43 S. W. 421, 19 Ky. Law Rep. 993.

It will thus be seen the qualification of voters in graded school elections is that of the electors in common school elections; the term "common schools" being used to designate those common schools which are not graded or high schools. The act of March 24, 1908, supra, entitled "An act for the government and regulation of the common schools of the state," establishes in some particulars a radical departure from the pre-existing system. It relates more especially to the formation and changing of districts, to the unification of the system, to its centralization, and to the maintenance of the schools by county taxation, as well as local and district taxation. It is a revision of important parts of the old system, but without any design to render the system as a whole inharmonious or unnecessarily complicated. In this view we are to consider this proviso in the second section of the act of 1908: "Provided, that any graded common school district that may exist in any educational division or that may hereafter be established according to law, whether operating under special charter,

vol. 135—32

or established by popular vote, as provided for in the laws relating to the graded common schools, and school districts now operating within municipal districts established and incorporated under special charter and supplementing the state school fund by a local tax of not less than twenty cents on each hundred dollars of assessed valuation of property, shall retain their present boundaries and be exempt from the provisions of this act.'' That means, we think, that in their boundaries, government, and regulation they are to be unaffected by the new statute. There is no qualification of voters provided for in graded school districts, except by reference to the qualification provided generally for school electors. When the Legislature changed the qualification in the revision of the law governing common schools in 1908, it must be deemed to have done so deliberately, and upon a careful study of the whole system. The effect of the proviso quoted above is the same as if the article on graded common schools (article 10, c. 113, Ky. St.) had been re-enacted as part of the act of 1908—and the special acts referred to in the proviso, also re-enacted, though their construction is not here involved. Sutherland on Statutory Construction, Sec. 154, thus states the rule: ''A revision is intended to take the place of the law as previously formulated. By adopting it the Legislature say the same thing, in effect, as when a particular section is amended by the words 'so as to read as follows.' The revision is a substitute. It displaces and repeals the former law as it stood relating to the subjects within its purview. Whatever of the old law is restated in the revision is continued in operation as it may operate in the connection in which it is re-enacted.''

The act of 1908 prescribes the qualifications of voters thus: "All male persons over 21 years of age, who shall have resided in a school subdivision for sixty days next before an election, shall have the right to vote at such election." Whatever other construction may be placed upon that language, it leaves no doubt that women are no longer entitled to vote in the general common school elections, however just might appear their claim to the right of suffrage. By the same act it is also provided: "All elections for school trustees shall be by ballot. * * * The officers of said election shall be a clerk and two judges, and shall be appointed by the regular election commissioners in each county." On the subject of voting upon the question of establishing a graded common school and a tax to maintain it, section 4467, Ky. St. (part of art. 10, supra) reads: "The said sheriff or other officer shall appoint a judge and a clerk of said election, who shall take and subscribe to an oath for the faithful performance of his duties.

On the day set apart for the election the officers shall open a poll, and shall propound to each voter who may vote the question: 'Are you against or for the graded common school tax?' and his vote shall be recorded for or against the same as he may direct." It was held, in Lee v. Trustees, supra, that that section required a viva voce vote on the subject of taxation. While the act of 1908 provides for a vote in school districts on the subject of local taxation, nothing is said as to how the vote shall be taken—whether by ballot or otherwise. In the election for trustees, voting by official ballot and the manner of preparing and furnishing the ballot are all provided for. From this, and the omission in the same act as to voting a tax, we infer that the Legislature intended the latter

election should be viva voce. So, as there is nothing in the new act in conflict with the provision of section 4467, and particularly as the latter provides for a viva voce election on all questions except that of trustees, we must conclude that the elections in this case were regularly held, in the respect as to the manner of voting.

The act of 1908 provides that officers of election, two judges, and a clerk shall be appointed by the county election commissioners. Section 4467, Ky. St., provides for only one judge and a clerk. In this proceeding the sheriff appointed a judge and clerk. The county election commissioners met and ratified those appointments, and appointed one judge in addition. The latter failing to act, his place was filled by another. It is the last-named person whose presence it is claimed by appellants invalidated the election. We think he was properly there for the purpose of holding the trustee election. Even if he participated under a mistaken notion of authority in the other election, it is not averred that the regular judge and clerk did not of their own judgment and action do all that the outsider is claimed to have attempted to do. Nothing that he did affected the result. At most it would be a harmless irregularity.

The statute required (section 4464, supra) that the petition for the election shall indicate "with exactness" the "location and site of said schoolhouse," meaning the schoolhouse that will be provided for the proposed graded common school. The petition in this case stated on this point as follows: "That the location of the schoolhouse in said district shall be at the building known as the Columbia M. & F. High School if it can be secured upon terms satisfactory to the trustees who may be elected in said proposed dis-

trict, or at some other suitable point within the corporate limits of the town of Columbia.'' The graded district proposed in the petition for the election embraced territory not within the town of Columbia, and included all the town. The Columbia M. & F. High School building is the Columbia Male and Female High School building in the town of Columbia, and is a well-known point, the location of which the voters and the court will take notice.

In the nature of things it is impossible to designate finally any point to be selected as the schoolhouse site, as it may not be possible to procure it at all, or upon reasonable terms. The idea is to settle as nearly as may be done the location of the proposed building. It is not contended by appellants that, if the designation had stopped at ''M. & F. High School,'' it would not have been sufficient. That which was added was no more than what would have been implied if it had not been added, except that it indicated that in no event was the building to be located outside the corporate limits of the town. It is now insisted, as one of the grounds of this defense, by appellant, that the ''M. & F. High School building'' cannot and could not have been acquired by purchase, because the title is held in trust by the Transylvania Presbytery in special trust, the legal title being in divers individuals, some of whom are infants, and the reversion in still others.

If, then, the designation had been of that building as the site, which would confessedly have fulfilled the statute, it would have followed that the trustees could have procured another site as near as they could to the one indicated. Indeed, section 4481, Ky. St., requires: ''Said board of trustees shall provide funds for purchasing suitable grounds and buildings, or for

erecting or repairing suitable buildings, and for other
expenses needful in conducting a good graded com-
mon school in their graded common school district;
and to this end they may use such part of the pro-
ceeds of the said tax as they may deem necessary."
The trustees are proceeding to acquire the identical
building named, and we have no doubt have the power
to do so. Unless insuperable obstacles arise, they
must do so, unless the people in the manner pointed
out by the statute require otherwise. If the title is
held as appellants say, still it may be acquired by
condemnation, it seems, if the proper parties are not
competent and willing to act in the premises. The
other words of the description may be treated as
surplusage.

The petition for election contained this clause with
respect to the use of the proposed tax: "For the pur-
pose of maintaining a graded common school in said
proposed graded common school district, and for the
erecting, purchasing, leasing, and repairing suitable
buildings therefor if necessary." The language of
the statute allowing the tax to be valid is (section
4464, supra): "For erecting, purchasing or repairing
suitable buildings therefor if necessary." It will be
seen that from a reading of section 4481, Ky. St.,
quoted above, it is made the duty of the trustees to
provide a suitable building and to maintain a good
graded common school in their district. We think
the expression "and for other expenses needful in
conducting a good graded common school" implies
the power to rent a suitable building temporarily, and
until one may be bought or built by the trustees. Sec-
tion 4481 expressly allows the tax voted to be so
applied. Its inclusion in the petition for the election
was nothing more than the two sections (4464 and

4481) read together authorized. It meant that the trustees were to buy a building, the one named, if they could, if not, to buy a lot and build a house in that vicinity; to repair any building bought or built by them; and in the meantime to lease a suitable building for the accommodation of the school. We conclude that the election was valid.

Prior to 1860, under the old seminary grants then in vogue in this commonwealth, there was established a school in Columbia known as "Robertson Academy." It was built with public funds, and for the purpose of public education. In 1860, by an act approved February 27th, of that year (Sess. Acts 1859-1860, p. 328, c. 674), the trustees of the town of Columbia were authorized to sell the Robertson Academy property and apply the proceeds to grading, graveling, and paving the public square of the town. On March 12, 1869, the Legislature passed another act (Acts 1869, p. 220, c. 1954), reciting the foregoing facts, and that the town had sold the Robertson Academy property for $346, and used the proceeds as authorized in the act of 1860, empowered the town to raise by taxation and appropriation of its public funds not exceeding $600 to the purchase of a lot and the building of a schoolhouse in the town "for common school purposes."

The act authorized the trustees of the town to take the title to the lot "to them and their successors in office as and for a common school house for said Columbia district." On April 23, 1869, C. J. Taylor and wife by deed referring to the above act conveyed to the persons named as trustees of the town of Columbia a lot in the town, in consideration of $140, "to have and to hold said lot of ground with all the appurtenances thereunto belonging to said persons,

named as trustees, and their successors in office as
and for the uses and purposes stated in said act.''
The common school district comprising the town of
Columbia was then known as ''District No. 29'' in
Adair county. The Legislature, by an act approved
February 16, 1870 (Acts 1869-70, p. 274, c. 307),
authorized the citizens of district No. 29 in Adair
county to vote a tax to build a schoolhouse for said
district.

Whether the house on the lot now in question
(which is the lot conveyed by Taylor and wife) was
built by the town as a municipal corporation under
the act of 1869, or whether it was built by the tax
authorized to be raised by school district No. 29 by
the act of 1870, does not appear. Nor do we deem it
material. The maintenance of public schools is a
state question, done in the exercise of the state's
sovereign power. When it authorized the appropri-
ation of public lands to build an academy for public
education, and subsequently let the town sell the
academy lot and use the proceeds in paving its
streets, it was competent for the Legislature to re-
quire the town to reimburse the state by buying an-
other lot for common school purposes; and as the
town did so, without complaint, its subsequent hold-
ing of the title as required by the act was a naked
trust which the Legislature could end at its will. This
was done when the Legislature enacted section 4484,
Ky. St., reading:.

''The title to all common school and all county
seminary property, the county court and the board
of trustees of said seminary consenting, in the limits
of any graded common school district organized un-
der the provision of this law, shall be, and the same
is hereby vested in the board of trustees of said

graded common school district, and they are hereby empowered to sell and convey same, or to use same for graded common school purposes, as to them shall seem best; but when county seminary property shall be appropriated, all pupils of the county shall be permitted to attend such school at such reduced tuition from what is ordinary as shall be equitable and made good to them their interest in said seminary property. It is further provided, that when any graded school district shall embrace any school property owned or held in trust by trustees, said trustees, by a majority of their board, are hereby authorized and empowered to convey their school property to the trustees of the graded school, at such price and on such conditions as may be agreed upon by the trustees of both parties.''

This is not county seminary property, as that term is used in the statute. It was at one time, it seems; but the Legislature, in the exercise of its power many years ago, changed it into common school property. It was not necessary then for the trustees (appellees) to have the consent of the county court or of the seminary trustees (there were none, so far as appears) to the vesting of the title in appellees. The town, as a corporation, had no beneficial interest in the property. Whether the trustees can or ought to buy the M. & F. High School property from Transylvania Presbytery, or any other owner, if there are others, is not presented in this record for decision. The elections complained of being valid, the discretion of the trustees will not be interferred with by the courts, certainly not upon less than such abuse of it as would be tantamount to fraud. No such case is presented. There need not have been a resort to

a sale by the court's commissioner; but of that unnecessary act appellants cannot complain.

We preceive no prejudicial error in the record, and the judgment is affirmed.