## Snyder, et al. v. Board of Trustees of LaGrange Graded Common School District.

(Decided March 14, 1911.)

### Appeal from Oldham Circuit Court.

1. Schools—Graded Common Schools—Change of Site.—Where title to the lot described in the petition for the establishment of a graded common school district can not be acquired, and the building thereon is unsafe and unsuitable for the purpose, the board of trustees may take the necessary steps to provide for a new site as near as practicable to the site described in the petition.

2. Same—Boundary.—Where the boundary of a district is fixed so as to follow the dividing lines between certain well known farms, such description is sufficient.

3. Bonds—Election Returns—To Whom Made.—Where the question of issuing bonds by a graded common school district is submitted at an election held pursuant to section 4481, Kentucky Statutes, the election returns may be properly made to and canvassed by the board of trustees.

JAMES S. MORRIS for appellants.

A. T. LADD for appellant.

Opinion of the Court by Wm. Rogers Clay, Commissioner—Affirming.

On August 5, 1907, an election was held in the La-Grange Graded Common School District of Oldham county, for the purpose of taking the sense of the white voters in said district upon the proposition whether or not they would vote an annual tax of twenty-five cents on each one hunderd dollars of property value in said proposed common school district, subject to State and county taxation, owned by white persons and corporations, and a poll tax of one dollar on each white male inhabitant over twenty-one years of age residing in said proposed district, for the purpose of establishing and maintaining a graded common school therein and for the repairing suitable buildings therefor. At the same time an election was held for the purpose of selecting trustees for the proposed graded common school district. The election resulted in a majority in favor of establishing the proposed graded common school district and the selection of five persons as trustees. The result of the election was properly certified. R. O. Duncan, S. T. Ratcliffe, J. S. Morris, J. T. Morgan and Ben Million were elected trustees. Upon receiving their certificates of election and taking the oath of office, said trustees met with the county superintendent and properly organized.

In the petition to the county judge, the location and site of the proposed school house was fixed at the corner of certain streets and in a building known as the Funk Seminary building. For a time the school was located at this place.

On July 27, 1910, the board of trustees, finding that no satisfactory or proper arrangements could be made by which they could secure the further use of the Funk Seminary building and property upon reasonable terms and cost, and being of the opinion that the seminary building was insufficient, unsuitable and unsafe for a school therein, ordered an election to be held in the district for the purpose of taking the sense of the qualified voters therein on the question whether the trustees of the district should issue and sell the bonds of the district for the purpose of purchasing a site and erecting a school building thereon. Said bonds to be issued in any amount not exceeding the limit allowed under the Constitution and laws of the State of Kentucky, and not to exceed $13,-

500. Proper notice of this election was given in the manner required by law. August 6 was fixed as the day of the election. The board appointed two judges, a sheriff and clerk to conduct the election. One hundred and sixty-five voters voted in favor of the issuance of the bonds, while fifteen voted against the proposition. The officers of the election delivered their returns of the same to the board of trustees of said school district. The board canvassed the returns and entered an order upon its record giving the result. The returns of this election were also made, with the certificate thereof, to the county superintendent of schools on August 13, 1910. On December 31, 1910, he certified the result to the Oldham County Court.

The assessed value of the taxable property of said district is $744,100.

It further appears that the board of trustees could not acquire title to the Funk Seminary building.

This action was brought by R. H. Snyder and other taxpayers of the graded common school district in question, to enjoin the proposed issue of the bonds. The action involves the validity of the proceedings leading up to the establishment of the district. as well as the regularity of the election at which the bonds were voted. All the proceedings are fully set out in the petition filed by appellants. To this petition a demurrer was sustained and the petition dismissed. From that judgment this appeal is prosecuted.

The first question presented is the authority of the board of trustees to change the location and site of the school house. To hold that the board of trustees is bound to maintain the school upon the site fixed in the petition, notwithstanding the fact that proper title thereto can not be acquired, and the building is not proper, suitable and safe for the purpose, would be to take entirely too narrow a view of the statute. Where there exists such an emergency as the facts of this case show, the board of trustees has power to provide a site different from the one described in the petition. In establishing a new site, however, the board should fix it at a point in the district as near as practicable to the site named in the petition. This construction of the statute, we think, is supported by the views of this court in the recent case of Jeffries, et al. v. Columbia Graded school, 135 Ky., 488.

The next question concerns the boundary of the dis-

trict. It is contended that the boundary is too indefinite, in that it is not described by metes and bounds and courses and distances, but follows the dividing lines between certain well-known farms. This method of description has been followed for a long time, and is, in our opinion, entirely sufficient. (McGinnis v. Board of Trustees of Bardstown, 32 Ky. Law Rep., 1291.)

But it is insisted that the returns of the election in which the bonds were voted were not properly made. Section 4481, authorizing the board of trustees to order an election, does not provide how the returns shall be made and canvassed. In view of the fact that the entire matter seems to be left in the hands of the board of trustees, we conclude that it has the power to receive, canvass the returns, and spread the result upon its records. That being true, it followss that the returns were properly made in this case.

As the taxable property of the district exceeds $744,-100, and as the vote was taken upon the question of issuing bonds not to exceed the limit allowed under the Constitution and laws of Kentucky, and under no circumstances for an amount greater than $13,500, and as the board of trustees proposes to issue only $12,500 worth of bonds, it follows that the proposed indebtedness is within the limit of two per cent of the value of the taxable property as provided in section 158 of the Constitution for taxing districts.

Being unable to perceive wherein there has been any failure substantially to comply with the law regulating the establishing of the graded common school district and the issuance of the bonds sought to be enjoined, we conclude the judgment should be affirmed, and it is so ordered.